Kloppstein, Respondent, vs. Fries, Appellant.

*October 5—November 8, 1950.*

For the appellant there were briefs by *Godfrey & Godfrey* of Elkhorn, and *Trinke & Raup* of Lake Geneva, attorneys, and *Alfred L. Godfrey* of counsel, and oral argument by *Alfred L. Godfrey.*

*Sturges P. Taggart* and *John G. McCollow,* both of Lake Geneva, for the respondent.

FAIRCHILD, J.   Upon this appeal it appears that the defendant bought the Gramm boxes because of the hydraulic lifts which were described to him by the plaintiff. The trial court found the facts to be that "plaintiff stated that the hoist would lift up to four tons; defendant relied upon plaintiff's statement and welded the boxes to his wagons before he tried the hoists; the defendant discovered within the first hour . . . that the hoist would not lift . . . even a load estimated to be between two and three tons, but, nevertheless, continued

to use the boxes from September 23, 1947, to October 9, 1947."

In the conclusions of law it was ruled that "there was an express warranty made by the plaintiff that boxes would lift four tons" and that "there was a breach of the express warranty." The question therefore is as to the correctness of the further ruling that "defendant failed to rescind within a reasonable period of time."

If time for rescinding is limited by the number of hours or days after discovering that the articles delivered are not the ones contracted for, and if such time may not be extended by the circumstances arising out of the dealings between the parties, then this judgment must be affirmed. But if intervening circumstances for which the seller is responsible induced the buyer to postpone rescission, the time for rescission must be regulated or modified by a consideration of those facts which created the circumstances affecting the postponement of rescission. *Advance-Rumely Thresher Co. v. Born,* 189 Wis. 309, 206 N. W. 904. In *Verlinden, Weickhardt, Dornoff O. Co. v. McDonald,* 217 Wis. 35, 40, 258 N. W. 359, we find authority for the holding that the time within which a defrauded buyer may rescind must necessarily vary with the circumstances of the case. Here the defendant promptly notified the seller of the defect and his desire to have that defect remedied. In the *Verlinden Case, supra,* it was said: "The immediate consideration is whether the period elapsing, when not agreed to, has been long enough to result in prejudice to the seller. The relation of the parties, the course of their dealing, and the imposition upon respondent of articles he did not need and would not have permitted to be delivered but for the deception. practiced upon him by appellant, give respondent the right to refuse to accept the goods." While the facts in the case just referred to differ in many respects from those now before us, the general doctrine there outlined applies. The testimony revealing the facts on

which defendant relies to relieve him from rescinding immediately on the discovery of the defects in the machinery are in brief as follows: The boxes were purchased on the 13th of September, 1947. They were to be used in harvesting the silage. It took from seven to eight days to assemble the machinery. The boxes were first used on the 23d day of September, 1947, and it was then discovered that the hydraulic apparatus did not lift a load of about two tons. The plaintiff told the defendant that the boxes would work when he purchased them, that they would handle up to about four tons. The defendant, when he found the boxes did not work, went to see the plaintiff. The plaintiff was not present, but he (defendant) talked to plaintiff's agent, Neil Quake, told him the boxes wouldn't work, and that he would like something done about it. He was told to communicate with Kloppstein. He waited a week, and nobody responded to his complaint, and on the 29th of September, he went again, accompanied by one Paul Peters. At that time an employee of the plaintiff, Mr. Walter Schmidt, and Mrs. Kloppstein were in the office. There is testimony to the effect that Walter Schmidt was present when the sale of the chopper was made to defendant, and that he was the manager for Kloppstein. In the conversation which took place on September 29th, defendant was told that Mr. Kloppstein was out. He said: "I told them I would like the wagon boxes put in working condition. They said they would have to see Louis about that. This was about September 29th. We waited a few days, and by that time I was through filling silo. I told my wife to go down and pay for the field harvester. This was after the harvesting was done. I paid him $2,100 and held back $50 because the chopper was not complete. Parts were missing. Sometime in February they supplied the missing parts, and I paid them the remaining $50. Mrs. went down with the check. She told me she was going to see what they were going to do

about the boxes. We wanted something done. I think she was informed by the lady that they would do nothing about it. I took the boxes back next morning and told them that they weren't working, that I wouldn't pay for them and he said that he would have absolutely nothing to do about it. I handed the boxes back. I returned the boxes October 10th. Kloppstein was not there. I was told he was on a fishing trip or hunting trip in Canada. He was gone. I was never able to get hold of him." It also appears from the testimony that in the conversation which occurred on October 9th at the time the $2,100 was paid, the defendant's wife was informed that there would be no adjustment and that nothing would be done about the boxes. Upon hearing of that conversation, the defendant returned the boxes October 10th. In order to use the boxes and before the test was made, it was necessary to weld the lifts on the wagons, because they wouldn't fit otherwise. There was a complete return of the boxes with the exception of the parts which were welded to the wagons.

The positive finding by the court that the defendant relied upon the agreement of Kloppstein to make the boxes work is well founded in the evidence. The reliance by the defendant upon Kloppstein's agreement did not deprive him under the circumstances of the right to expect that Kloppstein would remedy the defects when information concerning them reached him. The evidence of the reporting of the difficulties to the agents of the plaintiff and their response may properly be treated as suggesting the awaiting of the return of the plaintiff, and certainly there was no definite refusal to live up to the agreement of making the boxes operate according to the representation until October 9th. Defendant did have the right, therefore, to act on his understanding and his reliance upon the good faith and integrity of the plaintiff. The contract being as found by the trial court, there was assurance to the defendant continuing to the time of refusal by plaintiff

of an agreement that the machines would lift a four-ton load and would be made to work. His effort to acquaint the plaintiff with the situation by continuing to report the defects and asking for assistance did not destroy his right to rescind. It is considered under the circumstances that any finding of completed acceptance of the articles is against the clear preponderance and great weight of the evidence.

The defendant did not know until October 9th that the plaintiff was going to repudiate his agreement. There was no delay after that. A careful reading of the record convinces us that a good-faith effort to deal fairly with the plaintiff was made by the defendant. Referring again to the testimony, it appears that the defendant discovered the boxes didn't work on September 23d, that he went to see the plaintiff, who was away from his place of business, but he talked to one of his agents. He proceeded to do the unloading by hand. He discussed the matter with Walter Schmidt, an agent of the plaintiff, at a card party and at the place of business. He told them to get somebody out there to look at the boxes or he would send them back. He was at the plaintiff's place of business again in a few days, but the plaintiff was not there.

The trial judge in his opinion was warranted in observing as he did when he said "The callous indifference of the dealer then and since and his making no effort to show defendant that the hoists would work leads to the logical conclusion that he knew they would not carry the load he had mentioned. His demeanor on the trial was not helpful but was unfeeling." We are of the opinion that the plaintiff is not entitled to judgment under the circumstances of this case and that from all the evidence the ruling must be that the defendant did not fail to rescind within a reasonable period of time. The returning of the boxes was within a reasonable period.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in favor of the defendant allow-

ing the plaintiff the value of the parts not returned because welded to the wagon of the defendant. Plaintiff to pay the costs.

GEHL, J., took no part.